UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

LARRY SCOTT REYNOLDS,

    Petitioner,

vs.

BERT C. BOYD,

    Respondent.

_____/

Civil Action No. 3:14-CV-01249

HON. BERNARD A. FRIEDMAN

### OPINION AND ORDER ACCEPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DENYING PETITIONER'S APPLICATION FOR A WRIT OF HABEAS CORPUS

In this matter, petitioner has filed an application for a writ of habeas corpus. Magistrate Judge Alistair E. Newbern has submitted a Report and Recommendation ("R&R") in which she recommends that the Court deny the application.[1] (ECF No. 30). Petitioner has filed objections to the R&R (ECF No. 66) and defendant has filed a response in opposition to those objections. (ECF No. 69).

Pursuant to Fed. R. Civ. P. 72(b)(3), the Court shall review *de novo* any part of the R&R to which a proper objection has been made. A party may file "specific written objections to the proposed findings and recommendations" of a magistrate judge. Fed. R. Civ. P. 72(b)(2). Such

---

[1] On March 14, 2019, the Court accepted this very same R&R, which was issued by Magistrate Judge Newbern on September 28, 2018, and entered judgment in respondent's favor. (ECF Nos. 38, 39). However, defendant subsequently filed a motion for relief from judgment, asking that the Court set aside the 2019 opinion, order, and judgment, on the grounds that he had been abandoned by his attorney of record and therefore had been unable to file any objections to the 2018 R&R. (ECF No. 47). Magistrate Judge Newbern issued a R&R recommending that the Court grant petitioner's motion for relief from judgment. (ECF No. 56). In a January 20, 2022, opinion and order, this Court accepted that R&R and provided petitioner additional time to file any relevant objections to the 2018 R&R. (ECF No. 58). Now that petitioner has had the opportunity to file his objections, the Court shall reevaluate the 2018 R&R.

an objection "must: (A) specify the part of the order, proposed findings, recommendations, or report to which a person objects; and (B) state the basis for the objection." E.D. Mich. LR 72.1(d)(1). "Only those objections that are specific are entitled to a *de novo* review." *Lee v. Money Gram Corp. Off.*, No. 15-CV-13474, 2017 WL 4161108, at *1 (E.D. Mich. Sept. 20, 2017).

I.  **Background**

The magistrate judge summarized the history of this case and petitioner's habeas claims as follows:

> Reynolds was prosecuted for the murder of Melissa Atkins, who was Reynolds's former romantic partner and the mother of his child. *State v. Reynolds*, No. M2009-00185-CCA-R3-CD, 2010 WL 5343305, at *1 (Tenn. Crim. App. May 18, 2010) (*Reynolds I*); (Doc. No. 13-31, PageID# 3650-51). On March 5, 2008, Reynolds was indicted by the Rutherford County (Tennessee) grand jury on one count of first degree premeditated murder. (Doc. No. 13-1, PageID# 100.) After a seven-day trial, a jury found Reynolds guilty as charged and the Circuit Court of Rutherford County (the trial court) sentenced him to life in prison with the possibility of parole. (Doc. No. 13-6, PageID# 695-97.) . . . .
> . . . Reynolds filed a motion for a new trial, which the trial court denied. (Doc. No. 13-6, PageID# 715-24.) Reynolds then appealed the judgment of the trial court, arguing that (1) his Sixth Amendment right to present a complete defense was violated when the trial court prevented him from offering testimony from and about an alternative suspect named Karla Teutsch, who had previously been declared a material and necessary witness; (2) the trial court violated his right to an impartial jury by allowing jurors to ask questions; (3) the trial court admitted inadmissible hearsay despite the objection of trial counsel; (4) the trial court erred by failing to give the jury a curative instruction after the jury witnessed members of the victim's family weeping; and (5) the evidence was insufficient to support the jury's verdict. (Doc. No. 13-29, PageID# 3523-24.) The Tennessee Court of Criminal Appeals (TCCA) affirmed the trial court on December 16[,] 2010. *Reynolds I*, 2010 5343305, at *1. On May 25, 2011, the Tennessee Supreme Court denied Reynolds permission to appeal. (Doc. No. 13-34, PageID# 3753.)
> On February 17, 2012, Reynolds filed a petition for post-conviction relief in the Circuit Court of Rutherford County (the post-conviction trial court) raising several claims of ineffective

2

assistance of counsel. (Doc. No. 14-1, PageID# 3759-61.) After holding an evidentiary on Reynolds's claims, the post-conviction trial court found that Reynolds was not entitled to relief. (*Id*. at PageID# 3777.) Reynolds appealed that decision arguing that his trial lawyers were constitutionally ineffective because they failed to (1) adequately prepare for his trial; (2) call as a witness Reynolds's custody lawyer, Laurie Young; and (3) file a motion for the trial judge to recuse himself. (Doc. No. 14-4, PageID# 3911-12.) The TCCA affirmed the post-conviction trial court and the Tennessee Supreme Court again denied permission for further review. *Reynolds v. State*, No. M2012-01978-CCA-R3-PC, 2013 WL 1857112, at *1 (Tenn. Crim. App. May 1, 2013) (*Reynolds II*); (Doc. No. 14-6); (Doc. No. 14-9).

. . . Reynolds filed this petition on May 27, 2014. (Doc. No. 1, PageID# 17.) Respondent has answered the petition (Doc. No. 12) and filed the state court record. (Doc. Nos. 13, 14.) Reynolds filed a reply. (Doc. No. 22.)

\* \* \*

Reynolds asserts he is entitled to relief on three grounds. First, he claims that the trial court "violated [his] Sixth Amendment right to present a complete defense by refusing testimony from and about an alternative suspect the trial court had already determined to be a material and necessary witness." (Doc. No. 1, PageID# 4.) Second, Reynolds argues that the evidence presented at trial was insufficient to support the jury's verdict. (*Id*. at PageID# 5.) Finally, Reynolds alleges that he "was denied the effective assistance of counsel at trial and on direct appeal" because trial counsel:

> 1) "failed to adequately conduct any meaningful pre-trial investigation;"
>
> 2) "failed to interview potential witnesses that would have been favorable to the defense;"
>
> 3) "failed to adequately communicate with [Reynolds] in preparation for trial;"
>
> 4) "failed to call, as a trial witness, the attorney who was representing [Reynolds] in certain child support issues" and who "had valuable information that would have supported [Reynolds];"
>
> 5) "failed to allow [Reynolds] to view the video recording of his statement to police prior to his testimony at trial" despite

3

> Reynolds's "repeated requests to view that evidence before deciding whether or not to testify;"
>
> 6) "never prepared, in any manner, [Reynolds] to testify at trial;"
>
> 7) "never allowed [Reynolds] to view video statements of witnesses that were available to him despite the request of [Reynolds];" and
>
> 8) "failed to file a motion for the [trial judge] to recuse [himself] [despite counsel's awareness] that the wife of the [t]rial [j]udge was a co-employee of members of the victim's family."
>
> (*Id*. at PageID# 9.)

(*Id*., PageID.4121-23, 4154-55) (footnotes omitted). Petitioner's objections, however, only challenge Magistrate Judge Newbern's findings and recommendations as to his claim regarding his right to present a complete defense pursuant to the Sixth Amendment of the United States Constitution. (ECF No. 66, PageID.4442-59). The Court shall therefore review *de novo* only that portion of the magistrate judge's R&R.

## II.     Standard of Review

> As the Supreme Court has stated:
>
> The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires a prisoner who challenges (in a federal habeas court) a matter "adjudicated on the merits in State court" to show that the relevant state-court "decision" (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

*Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting § 2254(d)). A decision of a state court is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or if the state court "confronts facts that are

materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (O'Connor, J., concurring). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 562 U.S. 86, 100 (2011). Further, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (emphasis in original). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (internal quotation marks omitted). The focus of this standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks and citations omitted). In addition, factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary. *See* § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The federal habeas court's review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563

5

U.S. 170, 181 (2011).

"[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Harrington*, 562 U.S. at 98. When the state courts' decisions provide no rationale, the burden remains on the habeas petitioner to demonstrate "there was no reasonable basis for the state court to deny relief." *Id*. However, when a state court has explained its reasoning, that is, "[w]here there has been one reasoned state judgment rejecting a federal claim," federal courts should presume that "later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Wilson*, 138 S. Ct. at 1194. Accordingly, when the last state court to rule provides no basis for its ruling, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Id*. The "look through" rule applies regardless of whether the last reasoned state court opinion based its ruling on procedural default or ruled on the merits. *See id*. at 1194-95.

### III. Analysis

In her R&R, Magistrate Judge Newbern recommended that the Court reject petitioner's application for a writ of habeas corpus. She stated that "[v]iewed through AEDPA's deferential lens, the TCCA's rejection of Reynolds's claims was consistent with clearly established law and based on a reasonable determination of the facts in light of the evidence presented." (ECF No. 30, PageID.4159).

As to petitioner's Sixth Amendment complete defense claim specifically, Magistrate Judge Newbern correctly explained:

> **A. The Right to Present a Complete Defense**
> States have "broad latitude" to "establish rules excluding evidence from criminal trials." *Holmes v. South Carolina*, 547 U.S. 319, 324

6

Case 3:14-cv-01249   Document 70   Filed 10/05/22   Page 6 of 17 PageID #: 4482

(2006) (quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1998)). "[W]ell established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes*, 547 U.S. at 326 (internal citations omitted). The Supreme Court, "plainly referring to rules of [that] type," has made clear that the Constitution allows trial judges "to exclude evidence that is 'repetitive . . . , only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'" *Id*. at 326-27 (quoting *Crane v. Kentucky*, 476 U.S. 683, 689-90).

Such exclusions may be found in rules that regulate "the admission of evidence proffered by criminal defendants to show that someone else committed the crime with which they are charged." *Id*. at 327. When the proffered evidence "does not sufficiently connect the other person to the crime," it may be excluded. *Id*. (quoting 40A Am. Jur. 2d, Homicide § 286, pp. 136-38 (1999)). Rules allowing exclusions of that nature "are widely accepted." *Id*.

However, the "broad latitude" that rulemakers enjoy must not usurp the rights of defendants: "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Id*. at 324 (quoting *Crane*, 476 U.S. at 690). That guarantee encompasses "[t]he right to offer the testimony of witnesses, and to compel their attendance, if necessary," which is "a fundamental element of due process." *Washington v. Texas*, 388 U.S. 14, 18 (1967). Evidentiary rules that "infringe upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve" violate the accused's right to present a complete defense. *Holmes*, 547 U.S. at 324 (internal quotations and alterations omitted). However, "[o]nly rarely" has the Supreme Court held "that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence." *Nevada v. Jackson*, 569 U.S. 505, 509 (2013).

(ECF No. 30, PageID.4159-60).

The TCCA summarized and resolved Reynold's complete defense claim as follows:

The Defendant contends that the trial court violated his Sixth Amendment right to present a complete defense by refusing to allow him to present testimony from and about an alternative suspect, "Kenny," whom the trial court previously declared a material and necessary witness. The State counters that the trial court properly

7

applied the Tennessee Rules of Evidence when it excluded this evidence.

In an offer of proof about "Kenny," Karla Teutsch testified she lived in Shreveport, Louisiana, and she communicated with the victim through a MySpace page she created as a man named "Kenny" from Tennessee. Teutsch said she created a false account using the name "Kenny" and a photograph of a male in an attempt to talk to a girl with whom her boyfriend from Dickson, Tennessee, was having an affair. Teutsch added multiple people, including the victim, as "friends" of "Kenny" on the MySpace page to make the page look more realistic, rather than like a hoax website.

Teutsch said she did not, in reality, have her hunting license, but as "Kenny" she told the victim that she had been hunting. Also, the weekend that the victim was murdered, Teutsch was in Dickson, Tennessee, hunting with her boyfriend. She explained that she sat in the stand with him but did not have a gun.

After the victim's murder, Detective Mayercik contacted "Kenny" via MySpace and asked him to contact the police. Teutsch googled the detective and learned about the murder. She then emailed the detective and told him that she had created a false website under the name "Kenny" and gave him her phone number.

The trial court excluded this information as not relevant pursuant to Tennessee Rule of Evidence 401 and as misleading pursuant to Tennessee Rule of Evidence 403.

Exclusions of evidence may violate the Due Process Clause of the Fourteenth Amendment of the United States Constitution even if the exclusions comply with rules of evidence. *State v. Flood*, 219 S.W.3d 307, 316-17 (Tenn. 2007). Principles of due process require that a defendant in a criminal trial have the right to present a defense and to offer testimony. *See Chambers v. Mississippi*, 410 U.S. 284, 93 S. Ct. 1038, 35 L.Ed.2d 297 (1973); *State v. Brown*, 29 S.W.3d 427, 431 (Tenn. 2000). In *Washington v. Texas*, 388 U.S. 14, 87 S. Ct. 1920, 18 L.Ed.2d 1019 (1967), the United States Supreme Court stated:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

388 U.S. at 19.

8

The right to offer testimony, however, is not absolute: "In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence . . . ." *Chambers*, 410 U.S. at 302. Rules of procedure and evidence are designed to assure fairness and reliability in the criminal trial process. *Id*. So long as the rules of procedure and evidence are not applied arbitrarily or disproportionately to defeat the purposes they are designed to serve, these rules do not violate a defendant's right to present a defense. *Flood*, 219 S.W.3d at 317 (citations omitted). Because "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials," *Scheffer*, 523 U.S. at 308, "[a]n evidentiary ruling ordinarily does not rise to the level of a constitutional violation," *State v. Rice*, 184 S.W.3d 646, 673 (Tenn. 2006).

It has long been recognized by the courts of this state that an accused is entitled to present evidence implicating others in the crime. *State v. Powers*, 101 S.W.3d 383, 394 (Tenn. 2003) (citing *Sawyers v. State*, 83 Tenn. (15 Lea) 694, 695 (1885)). The *Powers* court instructed that the Rules of Evidence are adequate to determine whether such evidence is admissible. *Id*. In Tennessee, the determination of whether proffered evidence is relevant in accordance with Tennessee Rule of Evidence 402 is left to the sound discretion of the trial judge, as is the determination of whether the probative value of evidence is substantially outweighed by the possibility of prejudice pursuant to Tennessee Rule of Evidence 403. *State v. Kennedy*, 7 S.W.3d 58, 68 (Tenn. Crim. App. 1999) (citing *State v. Forbes*, 918 S.W.2d 431, 449 (Tenn. Crim. App. 1995); *State v. Burlison*, 868 S.W.2d 713, 720-21 (Tenn. Crim. App. 1993)). In making these decisions, the trial court must consider the questions of fact that the jury will have to consider in determining the accused's guilt as well as other evidence that has been introduced during the course of the trial. *State v. Williamson*, 919 S.W.2d 69, 78 (Tenn. Crim. App. 1995). We will only disturb an evidentiary ruling on appeal when it appears that the trial court arbitrarily exercised its discretion. *State v. Baker*, 785 S.W.2d 132, 134 (Tenn. Crim. App. 1989).

Initial questions of admissibility of evidence are governed by Tennessee Rules of Evidence 401 and 403. These rules require that the trial court must first determine whether the proffered evidence is relevant. Pursuant to Rule 401, evidence is deemed relevant if it has "'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See Forbes*, 918 S.W.2d at 449 (quoting Tenn. R. Evid. 401). In other words, "evidence is relevant if it helps the trier of fact resolve an issue of fact." Neil P. Cohen, et al., Tennessee Law of Evidence § 4.01[4], at

9

4-8 (4th ed. 2000). After the trial court finds that the proffered evidence is relevant, it then weighs the probative value of that evidence against the risk that the evidence will unfairly prejudice the trial. *State v. James*, 81 S.W.3d 751, 757 (Tenn. 2002). If the court finds that the probative value is substantially outweighed by its prejudicial effect, the evidence may be excluded. Tenn. R. Evid. 403. "'[E]xcluding relevant evidence under [Tenn. R. Evid. 403] is an extraordinary remedy that should be used sparingly and persons seeking to exclude otherwise admissible and relevant evidence have a significant burden of persuasion." *James*, 81 S.W.3d at 757-58 (quoting *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 227 (Tenn. Ct. App. 1999) (citations omitted)).

A defendant is entitled to present evidence implicating another in the crime only if the evidence is relevant under Tennessee Rule of Evidence 401 and the evidence is not unfairly prejudicial as provided by Rule 403. *Id*. In a criminal case, evidence that a third party had the motive and opportunity to commit the offense certainly would be relevant. *Powers*, at 395. Even if the evidence meets the test of relevance, however, Tennessee Rule of Evidence 403 may still justify exclusion of such evidence. Under Rule 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The evidence to establish that someone other than the defendant is the guilty party must be such evidence as would be relevant on the trial of the third party; and the evidence offered by the accused as to the commission of the crime by a third party must be limited to such facts as are inconsistent with the defendant's guilt, and to such facts as raise a reasonable inference or presumption as to the defendant's innocence. *Hensley v. State*, 28 Tenn. 243 (1848). To be admissible, the evidence must be such proof that directly connects the third party with the substance of the crime, and tends to clearly point out someone besides the accused as the guilty person. *State v. Algeron Cross*, No. M2004–01930–CCA–R3CD, 2005 WL 1252631, at *9 (Tenn. Crim. App., at Nashville, May 25, 2005), *perm. app. denied* (Tenn. Dec. 5, 2005). Evidence which can have no other effect than to cast a bare suspicion on another, or to raise a conjectural inference as to the commission of the crime by another, is not admissible. *Id*. (citing 22A C.J.S. Criminal Law § 729 (1989)).

In the case under submission, we conclude that the trial court did not abuse its discretion when it determined that the evidence that Teutsch communicated with the victim via a hoax MySpace page and was in Dickson on the weekend of the victim's murder was not relevant. Teutsch clearly explained the reason she created the

10

> MySpace page, and her communications with the victim were benign. The two had never met and never agreed to meet. There was no indication that Teutsch, coincidentally visiting Tennessee the weekend of the murder, had any idea where the victim lived or had ever been to her house. Further, there was no indication that Teutsch had any animosity toward the victim or any motive for harming the victim or any opportunity to do so. The fact that Detective Mayercik had an alternative suspect named "Kenny," who he later determined was not the murderer, was presented to the jury. The trial court did not abuse its discretion when it determined that the further details about "Kenny," presented through Teutsch were not relevant to the victim's murder. The Defendant is not entitled to relief on this issue.

*State v. Reynolds*, No. M2009-00185-CCA-R3-CD, 2010 WL 53433305, at *28-31 (Tenn. Crim. App. Dec. 16, 2010); *see also* ECF No. 30, PageID.4161-64 (quoting the same).

In the instant habeas application, petitioner argues that by excluding Teutsch's testimony, "[t]he trial court violated [his] Sixth Amendment right to present a complete defense." (ECF No. 1, PageID.5). Petitioner primarily relies on two cases in support of this argument: *Holmes v. South Carolina*, 547 U.S. 319 (2006), and *Washington v. Texas*, 388 U.S. 14 (1967). (ECF No. 22, PageID.4077).

In *Holmes*, the petitioner "sought to introduce evidence that another man, Jimmy McCaw White, had been in the victim's neighborhood on the morning of the assault and that White had either acknowledged petitioner's innocence or admitted to committing the crimes himself." *Holmes*, 547 U.S. at 319. The South Carolina Supreme Court upheld the trial court's exclusion of this evidence under the rule that "where there is strong evidence of [a defendant's] guilt, especially where there is strong forensic evidence, the proffered evidence about a third party's alleged guilt may (or perhaps must) be excluded." *Id*. at 329 (internal quotation marks omitted). The Supreme Court, however, held that "the rule applied by the State Supreme Court [did] not rationally serve the end that [it was] . . . designed to promote, *i.e.*, to focus the trial on the central issues by excluding evidence

that has only a very weak logical connection to the central issues." *Id*. at 330. The Court explained: "[B]y evaluating the strength of only one party's evidence, no logical conclusion can be reached regarding the strength of contrary evidence offered by the other side to rebut or cast doubt." *Id*. at 331. The Supreme Court therefore concluded that the South Carolina evidentiary rule applied in *Holmes* denied the petitioner a fair trial.

In *Washington*, the Supreme Court addressed a Texas procedural statute "providing that persons charged as principals, accomplices, or accessories in the same crime cannot be introduced as witnesses for each other." *Washington*, 388 U.S. at 15. The excluded testimony at issue was that of Charles Fuller – a co-participant in the alleged murder – who "would have testified that petitioner pulled at him and tried to persuade him to leave, and that petitioner ran before Fuller fired the fatal shot." *Id*. at 16. The Supreme Court held that the Texas procedural statute violated the petitioner's Sixth Amendment right to present a complete defense because it "arbitrarily denied him the right to put on the stand a witness who was physically and mentally capable of testifying to events that he had personally observed, and whose testimony would have been relevant and material to the defense." *Id.* at 23.

In the present case, Magistrate Judge Newbern concluded that "the TCCA's rejection of Reynolds's complete defense claim was not an objectively unreasonable application of either *Holmes*[,] *Washington*," or any other clearly established federal law. (ECF No. 30, PageID.4168). Having reviewed petitioner's application and objections, this Court concludes the same.

In his objections, petitioner largely repeats and amplifies the arguments raised in his application – namely, that the trial court violated his Sixth Amendment right to present a complete

12

defense[2] because its decision to exclude Teutsch's testimony contravened the Supreme Court's decisions in *Holmes* and *Washington*. (ECF No. 66, PageID.4448, 4453). Citing no relevant case law in support of his argument, he contends that the magistrate judge and Tennessee courts misinterpreted and misapplied the holdings of these two cases. (*Id.*, PageID.4453). He asserts that defendants possess an unqualified right to present a third-party defense, and that any restriction on this right constitutes reversible error. (*Id.*, PageID.4445).[3] Petitioner's strongest arguments are

---

[2] In his objections, petitioner separately argues that the trial court also violated his right to present witnesses on his own behalf. (ECF No. 66, PageID.4457). The right "to offer the testimony of witnesses, and to compel their attendance, if necessary," is contained within the Sixth Amendment right to present a complete defense. *Washington*, 388 U.S. at 19. Further, petitioner's arguments regarding his right to present witnesses and his right to present a complete defense are grounded, at least in part, in the same legal argument – namely, that the exclusion of Teutsch's testimony violated the Supreme Court's holding in *Washington*. (ECF No. 66, PageID.4459). Finally, as respondent notes, petitioner's habeas application fails to raise any claim regarding his right to present witnesses distinct from his complete defense claim. (ECF No. 69, PageID.4474). For these reasons, the Court shall only address petitioner's complete defense arguments and objections, although the same analysis does apply to his arguments regarding his right to present witnesses.

[3] The two out-of-circuit cases that petitioner cites in support of this argument are easily distinguishable from the present case. In *Scrimo v. Lee*, 935 F.3d 103, 120 (2d Cir. 2019), the Second Circuit explained:

> In circumstances in which . . . the marginal evidence pointing to the defendant over another person is flimsy, and the excluded evidence was the only independent source of facts essential to proving the defense's theory that the other person committed the crime, we must conclude that the wrongfully excluded testimony would have introduced reasonable doubt where none otherwise existed.

The court concluded that under such circumstances, the exclusion of third-party defense testimony would violate a defendant's right to present a complete defense. *See id.* In contrast, here, the evidence pointing to the defendant over Teutsch (or "Kenny") was not "flimsy." While defendant possessed motive and opportunity to murder the victim, Teutsch possessed neither, had engaged in only a few benign online communications with the victim, and did not know where the victim lived. *Reynolds*, 2010 WL 5343305, at *28-31.
   In *State v. Hannah*, 256 A.3d 1035, 1039 (N.J. 2021), the defendant was accused of the murder of two drug dealers. The Supreme Court of New Jersey concluded that Hannah's right to

13

drawn from a law review article on the "Direct Connection Doctrine." He refers to this doctrine as an "erroneous methodology," while admitting that "most jurisdictions adhere to" it. (*Id*., PageID.4446). This doctrine, petitioner argues, asks "'what the evidence proves' when courts should 'instead be asking merely the two basic relevancy questions: whether the evidence (a) is believable in itself and (b) slightly increases the marginal probability that a third party committed the crime.'" (*Id*., PageID.4447-48) (quoting David S. Schwartz & Chelsey Metcalf, *Disfavored Treatment of Third-Party Guilt Evidence*, 2016 WISC. L. REV. 337, 384 (2016)). Essentially, petitioner contends that the relevancy standard imposed by the state courts and the magistrate judge was unconstitutionally high and therefore arbitrarily excluded (or affirmed the exclusion of) his third-party defense in violation of the Sixth Amendment. (*Id.*, PageID.4453). He adds that the trial court failed to explain why Teutsch's testimony was excludable under Rule of Evidence 403. (*Id*., PageID.4454).

While petitioner raises a potentially intriguing academic theory regarding the

---

present a complete defense had been violated by the exclusion of his third-party defense when the state's case suffered from various weaknesses and the evidence against the third-party, another drug dealer named Thomas, was substantial. Some of the excluded evidence included, for example, that "Thomas's pager number was on a piece of paper in [one of the victim's] pocket when [he] was killed," "Thomas plotted to 'set up' Hannah and to have him 'take the weight' for one of the murders 'to get him off his back,'" and "Thomas was later distributing the same brand of heroin taken from the drug dealers on the night of their murders." *Id*. at 1058. In contrast, here, the only evidence implicating Teutsch was that she was "friends" with the victim on MySpace, had occasionally communicated with her online, and happened to be visiting her boyfriend in Tennessee on the weekend of the murder. *Reynolds*, 2010 WL 5343305, at *28-31. The paltry evidence against Teutsch is easily distinguishable from the evidence excluded in *Hannah*.

Moreover, neither *Scrimo* nor *Hannah* support the categorical statement asserted by petitioner that "the restriction of a defendant's ability to use a third-party defense at trial is reversible error of Constitutional magnitude that warrants relief in the form of a new trial." (ECF No. 66, PageID.4445). Rather, in both cases the courts based their decisions upon the nature of the evidence presented and the analysis conducted by the lower courts.

relevancy standard under Rule of Evidence 401, it is immaterial to the question before this Court. As stated above, under AEDPA, a habeas court must determine whether "the relevant state-court decision (1) was contrary to, or involved an unreasonable application of, clearly established Federal law, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Wilson*, 138 S. Ct. at 1191 (internal quotation marks omitted). Simply because Teutsch's testimony *could* have been deemed admissible does not make all other outcomes unreasonable and therefore unconstitutional. Moreover, in petitioner's own words, "most jurisdictions" apply the same standard applied by the Tennessee courts and magistrate judge in this case. (ECF No. 66, PageID.4446). That acknowledgment belies the notion that the state trial court's evidentiary determination was "contrary to, or involved an unreasonable application of, clearly established Federal law."

It was perfectly reasonable for the trial court to exclude evidence regarding a former potential suspect who was deemed to possess no knowledge of where the victim lived, no animosity toward the victim, no motive for harming the victim, no opportunity to harm the victim, and clear explanations regarding the hoax MySpace page and her reason for visiting Tennessee the weekend of the murder. *See Reynolds*, 2010 WL 53433305, at *31. Further, the state courts' analysis was not in conflict with the Supreme Court's holdings in either *Holmes* or *Washington*, as petitioner argues in his application and his objections. The state courts did not exclude Teutsch's testimony solely due to the strength of the prosecution's evidence against petitioner, as was the case in *Holmes*; nor did they reject it based upon a state rule barring otherwise relevant and material testimony due to the nature of the witness, as was the case in *Washington*. Rather, applying Tennessee Rules of Evidence 401 and 403, which essentially mirror the corresponding Federal Rules of Evidence, the Tennessee courts carefully weighed Teutsch's testimony and concluded that it did not sufficiently or logically

15

connect her to the crime or central issues of this case and therefore posed a greater risk of confusing or misleading the jury than helping them decide where the truth lay. It is widely accepted that when, as here, the proffered evidence "does not sufficiently connect the other person to the crime, as, for example, where the evidence is speculative or remote, or does not tend to prove or disprove a material fact in issue at the defendant's trial," such evidence may be excluded. *Holmes*, 547 U.S. at 327.

The facts of this case are also materially distinguishable from those in *Holmes* and *Washington*. In those cases, the state courts excluded evidence that was indisputably exculpatory. Here, the evidence only loosely tied Teutsch to the victim and did not tie her to the crime at all. Although third-party defense evidence need not be indisputably exculpatory to be deemed relevant, the compelling nature of the evidence in *Holmes* and *Washington* bolstered the Supreme Court's determination that the exclusion of that evidence was unconstitutionally arbitrary and certainly distinguishes those two cases from the facts underlying petitioner's claim.

## IV. Conclusions

Given the state courts' detailed analysis of the relevant law and facts, as well as the nature of the testimony at issue in this case, the decision to exclude Teutsch's testimony was neither contrary to clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. The Court concludes that petitioner's complete defense claim cannot overcome AEDPA's highly deferential standard and does not warrant the requested relief.

As to petitioner's remaining claims – i.e., insufficient evidence and ineffective assistance of counsel – the Court need not conduct *de novo* review, as petitioner has not filed specific written objections to the magistrate judge's proposed findings and recommendations regarding those claims. The Court has independently reviewed the relevant portions of the R&R and pertinent underlying documents and finds no error in Magistrate Judge Newbern's September 28, 2018 R&R.

As the Court previously stated, her "exhaustive recitation of the facts and . . . careful analysis of petitioner's claims are thorough and correct." (ECF No. 38). Accordingly,

IT IS ORDERED that petitioner's objections (ECF No. 66) to Magistrate Judge Newbern's R&R are overruled.

IT IS FURTHER ORDERED that Magistrate Judge Newbern's September 28, 2018, R&R (ECF No. 30) is hereby accepted and adopted as the findings and conclusions of the Court.

IT IS FURTHER ORDERED that petitioner's application for a writ of habeas corpus is denied.

Dated: October 5, 2022  
    Detroit, Michigan

s/Bernard A. Friedman  
BERNARD A. FRIEDMAN  
SENIOR UNITED STATES DISTRICT JUDGE  
SITTING BY SPECIAL DESIGNATION